UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON MOURGUET,

              Petitioner,              Case Number 06-13284
                                                          Honorable Thomas L. Ludington

v.

GERALD HOFBAUER,

              Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

On July 20, 2006, Petitioner Jason Mourguet ("Petitioner"), presently confined at the Marquette Correctional Facility in Marquette, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner's pro se application challenges his convictions for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), three counts of assault with intent to murder, Mich. Comp. Laws, § 750.83, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Respondent Gerald Hofbauer ("Respondent") filed a response to the petition. Petitioner's claims lack merit and are not cognizable on habeas review. The Court, therefore, will deny the petition.

I

The Michigan Court of Appeals summarized the circumstances giving rise to Petitioner's convictions as follows:

> The evidence at trial indicated that defendant was ejected from a birthday party at the home of Daniel Knope's parents, after he urinated on some basement steps. Defendant was pushed by Joseph Knope and Donald Lewis as he departed. Defendant returned within an hour with a semi-automatic rifle and began firing it into two rooms occupied by Daniel and Joseph Knope, Lewis, and another guest, Robert Grenke. Joseph Knope and Grenke were struck by gunfire and Joseph's

> wounds were fatal.
>
> Defendant, who did not dispute that he was the shooter, presented a defense of diminished capacity based on voluntary intoxication. Defendant's expert, Dr. Abramsky, opined that defendant was not mentally ill for purposes of an insanity defense, but believed that defendant had an organic brain syndrome, which combined with drug and alcohol use, prevented him from forming a specific intent to kill. In rebuttal, the prosecutor's expert, Dr. Robinson, agreed that defendant was not mentally ill for purposes of an insanity defense, and further opined that defendant's capacity to form a specific intent to kill was not diminished.

*People v. Mourguet*, No. 221866, slip op. at 1 (Mich. Ct. App. Dec. 7, 2001).

Following a jury trial in Wayne County Circuit Court, Petitioner was sentenced to life imprisonment for the murder conviction, and twenty-five to fifty years imprisonment for each of the assault convictions, all to be served concurrently with one another and consecutively to two years imprisonment for the felony-firearm conviction.

Petitioner appealed the conviction to the Michigan Court of Appeals, contending that he was incapable of forming a specific intent to murder, that the prosecutor engaged in misconduct, and the trial court improperly instructed the jury. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Mourguet*, No. 221866 (Mich. Ct. App. Dec. 7, 2001).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Mourguet*, No. 120924 (Mich. Aug. 30, 2002).

Petitioner then filed a motion for relief from judgment in the trial court, raising the following claims: (i) police failed to collect evidence relevant to the investigation; (ii) Michigan Supreme Court's reinterpretation of diminished capacity defense was an unconstitutional retroactive application; (iii) ineffective assistance of trial counsel; and (iv) ineffective assistance of appellate counsel. The trial court denied the motion for relief from judgment on procedural grounds. *People*

*v. Mourguet*, No. 98-09577 (Wayne County Circuit Court March 16, 2004).

Petitioner filed applications for leave to appeal the trial court's order in the Michigan Court of Appeals and Michigan Supreme Court. Both Michigan appellate courts denied leave to appeal. *People v. Mourguet*, No. 261242 (Mich. Ct. App. Sept. 21, 2005); *People v. Mourguet*, No. 129868 (Mich. March 27, 2006).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims: (i) prosecutor improperly argued that Petitioner had a propensity for first-degree murder and assault based upon his character; (ii) police failed to collect material evidence; (iii) the Michigan Supreme Court retroactively applied a change to Michigan' law of diminished capacity in violation of the *Ex Post Facto* Clause; (iv) ineffective assistance of trial counsel; and (v) ineffective assistance of appellate counsel.

II

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). This Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising the question of effective assistance of counsel, as well as other constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The AEDPA applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Because Petitioner's application was filed after that date, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

-3-

was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. at 521 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)) (internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) ("All factual findings by the state court are accepted by this Court unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially

-4-

indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application

*Id*. at 409, 410-11. *See also Dorchy v. Jones*, 398 F.3d 783, 787-88 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A

In his first claim for habeas corpus relief, Petitioner argues that the prosecutor's improper closing argument denied him his right to a fair trial. Specifically, Petitioner objects to the following portion of the prosecutor's closing argument:

> Ladies and gentlemen, I ask you to look very carefully at all of the evidence that you heard, no matter which side produced it. I ask you to use your common sense. I ask you to remember that you don't base your decision on sympathy for either side. You don't based your sympathy – your decision on sympathy for the Knope family, the fact that Joseph Knope isn't here. You don't base your decision on sympathy for Mr. Mourguet because he's a small man, because he's slight in height or whether, or that he had difficulty in childbirth, or that he had difficulty with his behavior. In fact, what Dr. Abramsky and his mother probably explained for us is something that a lot of times you hear people – when something like this happens, the people say I don't

> know how this could have happen[ed], the people say I don't know how this could have happened. I know that person. That doesn't make sense. Well, I would suggest based on what you've heard from Dr. Abramsky and from Mr. Mourguet's mother, in this case, it makes perfect sense because you had a person who was a problem to begin with.

Tr., Vol. V at 87.

Respondent argues that this claim is procedurally barred. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). A court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)). The first consideration is whether the prosecutor's conduct and remarks were improper, and, if so, consider the following four factors to determine "whether the impropriety was flagrant" and, thus, warrants habeas relief:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or

extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007) (internal quotations omitted). "When a prosecutor dwells on a defendant's bad character to prove that he or she committed the crime charged," prosecutorial misconduct may be found. *Cristini v. McKee*, --- F.3d ----, 2008 WL 2129742, *10 (6th Cir. May 22, 2008)

The Michigan Court of Appeals, although finding this claim was not preserved for appellate review, nevertheless briefly addressed the remark and held that the "isolated remark" was not plainly improper. *Mourguet*, slip op. at 4. This Court agrees. In *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000), the Sixth Circuit held that the prosecutor engaged in misconduct by emphasizing a defendant's "bad character" and implying to jurors during closing argument that they should consider the defendant's "unseemly" character when rendering their verdict. The Court of Appeals noted that the prosecutor's closing argument was an "animated recitation" of the defendant's purported "bad character" and that it pervaded both closing argument and rebuttal. *Id.* The pervasive nature of the improper argument coupled with the extremely vehement attacks on the defendant's character, rendered the prosecutor's argument so focused on Petitioner's purported character, as opposed to the facts of the case, to constitute prosecutorial misconduct.

In contrast, in this case, the prosecutor's challenged argument was isolated and, even assuming it was improper, certainly does not rise to the level of that found in *Washington*. In addition, immediately following the challenged argument, the prosecutor made the following comment:

> But being deprived of oxygen at birth, or crying until you're blue, or having epileptic seizures or being a behavior problem all your life is not a justification or a mitigation for a crime like this. It does not excuse somebody intentionally getting a gun and

going back to hunt people and kill them.

Transcript, Vol. V, p. 86.

The above demonstrates that the prosecutor was not urging the jury to convict based upon Petitioner's character or his past behavior. Instead, the prosecutor was urging the jury not to be swayed by the evidence presented by Petitioner showing his difficult childhood and to convict based upon the evidence presented which, the prosecutor argued, supported a finding of a specific intent to kill. The Court finds that this argument did not deprive Petitioner of his right to a fair trial.

B

Respondent contends that Petitioner's remaining claims for habeas relief are procedurally defaulted. Those claims are: (i) he was denied due process when the police failed to collect material evidence; (ii) the Michigan Court of Appeals improperly interpreted the statute governing the defense of diminished capacity; and (iii) his trial attorney was ineffective in failing to fully explore and assert a voluntary intoxication defense, failing to file a pretrial motion to dismiss, failing to object to critical portions of the trial, and failing to request a cautionary instruction.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his

claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to a petitioner's claim must exist, and a petitioner must have failed to comply with that state procedural rule. *Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). Additionally, the last state court from which a petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of a petitioner's federal claim. *Coleman*, 501 U.S. at 729-30.

This Court begins its analysis of whether Petitioner's claims are procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claims. *See id.* at 729-30. The Michigan Supreme Court, the last state court to address these claims, which were presented for the first time on collateral review, denied leave to appeal because Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Mourguet*, No. 129868 (Mich. March 27, 2006).

The Sixth Circuit Court of Appeals has held that M.C.R. 6.508(D) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice where the rule was in effect at the time of a petitioner's direct appeal. *Luberda v. Trippett,* 211 F.3d 1004, 1007 (6th Cir. 2000), *citing Rogers v. Howes*, 144 F.3d 990 (6th Cir.

1998). M.C.R. 6.508(D) was enacted in October 1989. Here, Petitioner was convicted in 1999. Thus, M.C.R. 6.508(D) was a firmly established and regularly followed state procedural bar at the time of Petitioner's convictions and direct appeals. The Sixth Circuit Court of Appeals has also held that even a judgment as brief as the one by which the Michigan Supreme Court denied leave to appeal in this case is sufficient to invoke the doctrine of procedural default. *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007); *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000). Accordingly, the state court's judgment rested on a procedural bar and the doctrine of procedural default applies.

Therefore, this Court may not review a petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

In his fifth claim for habeas relief, Petitioner asserts ineffective assistance of appellate counsel to excuse his default. The Supreme Court has held that under the cause and prejudice standard "cause" must be "something *external* to a petitioner, something that cannot be fairly attributed to him." *Id.* at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is a petitioner's agent when acting, or failing to act, in furtherance of the litigation, and a petitioner must 'bear the risk of attorney error' . . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." *Id.* at 753-54 (internal citations omitted).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two criteria test for determining whether a habeas petitioner has received ineffective assistance of

counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance caused prejudice. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.

1990).

The last state court to address Petitioner's claim of ineffective assistance of appellate counsel, the Michigan trial court, held that Petitioner failed to show that his appellate attorney was ineffective in failing to raise these claims on direct review and, further, held that Petitioner failed to show that he suffered any resulting prejudice. The Court considers the potential merits of each of the claims which were not raised on direct appeal to determine counsel's reasonableness in declining to raise them.

First, Petitioner argues that police failed to collect material evidence germane to the investigation. Specifically, the police failed to collect and preserve the decedent's shirt, and failed to collect and preserve suspected LSD which was found by Petitioner's mother in the garage where the assault weapon was retrieved on the night of the shooting.

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.* However, "the Due Process Clause requires a different result when . . . deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 56 (1989). The state's duty to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488 (1984). "To meet this standard . . . evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of

such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. Further, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58.

Petitioner has not shown that the evidence the police failed to preserve could reasonably be expected to play a significant role in his defense, nor has he shown any bad faith on the part of the police. Therefore, appellate counsel was not ineffective in failing to raise this claim on direct appeal.

Next, Petitioner argues that his appellate attorney was ineffective in failing to raise a claim on direct appeal that a change in the law governing the defense of diminished capacity, as explained in *People v. Carpenter*, 464 Mich. 223 (2001), was retroactively applied to him in violation of the *Ex Post Facto* Clause. Michigan courts have repeatedly held that the disallowance of the diminished capacity defense for a crime committed before *Carpenter* was issued does not violate the *Ex Post Facto* Clause "where a precisely drafted statute, unambiguous on its face, is interpreted by [the Supreme] Court for the first time, there has not been a 'change' in the law." *People v. Talton*, 2002 WL 1375894, *4 (Mich. Ct. App. June 25, 2002); *see also People v. Lancaster*, 2006 WL 3751420, *1 (Mich. Ct. App. Dec. 21, 2006). Thus, Petitioner cannot show that he was prejudiced by his appellate attorney's failure to raise a claim which has been denied by the court of appeals.

Finally, Petitioner argues that his appellate attorney was ineffective in failing to raise ineffective assistance of trial counsel claims on appeal. Petitioner argues that counsel failed to fully explore and assert a voluntary intoxication defense, failed to file a pretrial motion to dismiss, failed to object to critical portions of the trial, and failed to request a cautionary instruction regarding the

police department's failure to preserve evidence. Trial counsel presented evidence of Petitioner's intoxication and argued that his intoxication interfered with his ability to form the requisite intent. Petitioner also has failed to show any reasonable likelihood that a motion to dismiss would have succeeded. He has failed to show that trial counsel failed to object in instances where such objection would have been appropriate or that he was entitled to a cautionary instruction regarding the preservation of evidence.

Because Petitioner has failed to establish that his appellate attorney was ineffective in declining to raise these claims on direct appeal, he has failed to show cause for his procedural default. Petitioner's second, third, and fourth claims are therefore barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup*, 513 U.S. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.* This evidence "must show that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." *Id.* at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, these claims are barred from consideration by procedural default.

III

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or it may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, a court has studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See id.* at 90 (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,' the district judge is, at that point, often best able to determine whether to issue the COA.") (overruled on other grounds).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must "show . . . that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the court will deny a certificate of appealability.

IV

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. # 1] is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

                                                  s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

Dated: September 19, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 19, 2008.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS